T.C. Summary Opinion 2007-189

UNITED STATES TAX COURT

HECTOR F. ARIAS AND CAROLEE PURCELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6796-06S.                    Filed November 6, 2007.

Hector F. Arias and Carolee Purcell, pro sese.

<u>Neal O. Abreu</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $5,415 deficiency in petitioners' Federal income tax for 2003 and a $1,083 penalty under section 6662(a).  After a concession by respondent,[1] the issue for decision is whether petitioners must include in gross income a $45,033 distribution from a trust.

Background

The parties stipulated some of the facts, and they are so found.  We incorporate the stipulation of facts and attached exhibits herein by this reference.  At the date of filing the petition, petitioners resided in El Sobrante, California.

Patrick Purcell (Mr. Purcell), petitioner Carolee Purcell's father, and Sherry Purcell,[2] her sister, lived in Michigan in 2003.  Patrick Purcell died in August 2003.  Mr. Purcell named petitioner Carolee Purcell and Sherry Purcell (sometimes hereinafter referred to as the sisters) copersonal representatives of his estate and cotrustees of his trust, the

---

[1] At trial, respondent conceded the accuracy-related penalty under sec. 6662(a).

[2] Sherry Purcell is also referred to as Sherry Knorr in the record.  The Court will refer to her as Sherry Purcell or as petitioner Carolee Purcell's sister.

Patrick Purcell Trust (the trust).[3]  The sisters chose Sherry

Purcell's home address as the address of the trust.

The trust reported on Form 1041, U.S. Income Tax Return for

Estates and Trusts, the following taxable items for 2003:

Interest income of $65, total ordinary dividend income of $378,

and annuities, royalties, and other nonpassive income of $90,915.

On the Distribution Allocation Worksheet for the 2003 Form 1041,

the trust reported that it distributed the following taxable

items:  Interest income of $64, total ordinary dividends income

of $373, and annuities, royalties, and other nonpassive income of

$89,627.  The trust reported on Schedule K-1 (Form 1041),

Beneficiary's Share of Income, Deductions, Credits, etc., total

distributions for 2003 to petitioner Carolee Purcell of $45,033,

consisting of interest income of $32, dividend income of $187,

and business income of $44,814.[4]

In addition to the items discussed above, the trust received

and distributed:  (1) Benefits from a life insurance policy on

---

[3] The record includes inconsistencies in the taxpayer identification number (TIN) used by the trust and in the date of trust formation.  The items of income, deduction, and credit for the two TINs are identical.  From the record before the Court, Mr. Purcell established only one living trust to benefit his daughters.  Accordingly, we do not consider these discrepancies significant.

[4] Although the declaration of trust was not introduced in evidence, it is clear from the record that Mr. Purcell intended his daughters to benefit equally from the trust.  The amounts reported as distributed to petitioner Carolee Purcell represent one-half of the total distributions.

the life of Mr. Purcell; (2) proceeds from the sale of his home; and (3) proceeds from the liquidation of his brokerage and Roth individual retirement accounts (Roth IRA). Petitioner Carolee Purcell received one or more checks drawn on the trust account and payable to her in 2003. She received more than $170,000 from the trust following Mr. Purcell's death.

Petitioners timely filed their 2003 joint Federal income tax return. Petitioners did not report any distributions from the trust on the 2003 return. Respondent determined a $5,415 deficiency in petitioners' Federal income tax for 2003, attributed to petitioners' failure to report a $45,033 trust distribution. Petitioners timely petitioned for a redetermination.

Discussion

I.  Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under certain circumstances, the burden of proof as to factual matters shifts to the Commissioner. Sec. 7491(a). However, petitioners have neither alleged that section 7491 applies nor established their compliance with the requirements of section 7491(a)(2)(A)

and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests.

Respondent claims that petitioners cooperated only partially and that petitioners produced only some of the documentary evidence they possess. At trial, petitioners admitted that they had not searched every location where relevant documents were likely stored. We agree with respondent that petitioners have not fully satisfied the requirements of section 7491(a)(2)(A) and (B), and, therefore, petitioners bear the burden of proof.

II. <u>Trust Distribution</u>

Petitioners received $170,000 or more in distributions from the trust following Mr. Purcell's death. Petitioners acknowledge receipt of funds from the trust but assert that they were not provided sufficient information to determine whether the distributions constituted gross income. The distributions from the trust included but were not limited to the proceeds from Mr. Purcell's life insurance policy, from the sale of his home, from the liquidation of his brokerage account, and from a liquidating distribution from his Roth IRA account.

In an August 2003 letter to the Purcell sisters, Mr. Purcell's estate planning attorney explained: "Other than IRA, 401k [sic], bond interest, and final pay, the amounts you inherit are income tax free." The attorney informed the Purcell sisters that the section 401(k) plan maintained by Mr. Purcell's employer

did not permit "stretching" the retirement benefits and that "your father's entire interest in the plan will be paid to you this year and you will be required to pay income tax on the full amount of the distribution."

On September 1, 2003, the sisters executed a "Lump Sum Election Form" for the section 401(k) account, directing that the entire benefit be paid to the trust and selecting the option for lump-sum payment with 20-percent withholding for Federal income tax.[5]

The Form 1041 filed by the trust does not reflect any tax payments made by the trust, any estimated taxes paid by the trust, any estimated tax payments allocated to the beneficiaries, or any Federal income taxes withheld on payments received by the trust.[6]

---

[5] Although the distribution election form submitted in evidence reflects a request for lump-sum distribution of the retirement benefits with 20-percent withholding for Federal income tax, petitioners have not produced any evidence, and the record does not reflect, that any taxes were actually withheld from the distribution made to the trust.

[6] The "1099-R Detail Report - 2003" attached to the Form 1041 lists a single 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., with payor "Alliance Benefit Gro". It reports that code 4 was entered in box 7 (indicating payment on account of death of the retirement plan participant), that the gross distribution was $90,915, that the taxable amount was $90,915, and that Alliance did not withhold any taxes from the distribution.

Gross income includes all income from whatever source derived, including income in respect of a decedent[7] and income from an interest in an estate or trust.[8] Sec. 61(a)(14) and (15). Gross income generally does not include amounts received under a life insurance contract, if received by reason of the death of the insured. Sec. 101(a)(1). Gross income also does not include the value of property acquired by gift, inheritance, bequest, or devise. Sec. 102(a). But gross income does include the income earned on such property.[9] Sec. 102(b)(1).

---

[7] Income in respect of a decedent (IRD) refers to those amounts to which a decedent was entitled as gross income but which were not properly includable in the decedent's Federal income tax returns, including his final tax return. Sec. 691(a); sec. 1.691(a)-1(b), Income Tax Regs. Unpaid, tax-deferred retirement benefits, such as the instant distributions from Mr. Purcell's sec. 401(k) account, are taxable under sec. 72 and are an example of IRD.

[8] The trust in this case acts as a conduit, with income flowing through the trust to the beneficiaries. Secs. 651(a), 661(a). The income received by a beneficiary retains the same character in the hands of the beneficiary as in the hands of the trust. Secs. 652(b), 662(b). Thus, income excludable from gross income by the trust is excludable by the beneficiaries, but each beneficiary must include in gross income all nonexcludable trust income that is required to be distributed to the beneficiary, whether actually distributed or not. Secs. 652(a), 662(a); secs. 1.652(a)-1, 1.662(a)-1, Income Tax Regs.

[9] Thus, the value of Mr. Purcell's assets at the date of his death and the benefits under Mr. Purcell's life insurance policy that flow through the trust would not be taxable to the beneficiaries. However, any distributions from his sec. 401(k) account and other items includable in the gross income of the trust that flow through to the beneficiaries would be taxable to the beneficiaries.

Petitioners testified that Carolee Purcell returned to her home in California a few weeks after her father died. At that point, Sherry Purcell immediately took control of the estate and managed the estate and the trust. At some point, relations between the sisters became strained. Petitioners permitted Sherry Purcell to act as the sole trustee, despite the fact that petitioner Carolee Purcell was a copersonal representative and cotrustee.[10]

Petitioners contend that Sherry Purcell distributed funds from the trust to Carolee Purcell without identifying the source of the funds. Petitioners also contend that Sherry Purcell refused to provide specific information about the estate or the trust. At trial, petitioners did not deny receiving payments from the trust but argued that neither the trust nor respondent clearly identified the distributions at issue as taxable.

The record reflects that the trust distributions to petitioner Carolee Purcell result from dividends, interest, and retirement benefits. Petitioners have not demonstrated that the $45,033 received from the trust in 2003 was not includable in gross income.

---

[10] Carolee Purcell testified that she discussed her concerns about the trust with her father's attorney, that the attorney characterized Sherry Purcell as belligerent and hostile, and that the attorney withdrew from representing the trust because he could not work with Sherry Purcell.

Respondent's determination is sustained.

<u>Decision will be entered for respondent as to the deficiency and for petitioner as to the section 6662(a) accuracy-related penalty</u>.